| | |
|---|---|
| HARTFORD INSURANCE COMPANY OF THE MIDWEST, and HARTFORD CASUALTY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> DANA TRANSPORT INC., GREAT WEST CASUALTY COMPANY, AXIS SURPLUS INSURANCE COMPANY, and AMERICAN GUARANTY AND LIABILITY INSURANCE COMPANY, <br><br> Defendants. | Civ. No. 16-9091 (KM) (JBC) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiffs, Hartford Insurance Company of the Midwest, and Hartford Casualty Insurance Company ("Hartford"), brought this action against Dana Transport Inc. ("Dana Transport") and three insurance companies,[1] seeking a declaratory judgment and reformation of an insurance contract between Hartford and Dana Transport. Essentially, Hartford seeks a declaration of non-coverage. If Hartford is not liable, the other insurance companies would potentially have a correspondingly greater obligation to indemnify. Now before the Court are two dispositive motions: (1) Axis Surplus Insurance Company's motion to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), and for lack of subject matter jurisdiction, pursuant to Fed. R.

---

[1]     The defendant insurers are Great West Casualty Company ("Great West"), Axis Surplus Insurance Company ("Axis"), and American Guaranty and Liability Insurance Company ("AGLIC").

Civ. P. 12(b)(1);[2] and (2) Hartford's motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c).

For the reasons stated below, Axis's motion to dismiss will be GRANTED IN PART and ADMINISTRATIVELY TERMINATED IN PART, and Hartford's motion for judgment on the pleadings will be DENIED.

## I.  BACKGROUND

### A. Dana Transport's Indemnity Coverage

The allegations of the Complaint are taken as true for purposes of this motion. According to the Complaint, Hartford has issued annual commercial auto liability insurance policies to Dana Transport, a New Jersey corporation, providing coverage each year from 2008 through 2014. (Compl. ¶¶ 8, 16)[3] The policies issued for 2008, 2009, and 2011 contain an endorsement (Endorsement Form HA 99 03 01 87) that expressly excludes from coverage claims for loss arising out of autos with a gross vehicle weight greater than

_____

[2]     Both Great West and AGLIC have moved to join Axis's motion to dismiss. (ECF nos. 23, 29) AGLIC has also moved to join Axis's opposition brief. (ECF no. 43) These motions to join will be granted.

[3]     Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| "Compl." = | Declaratory Judgment Complaint (ECF no. 1) |
| "Def. Mot." = | Defendant Axis Surplus Insurance Company's Memorandum of Law in Support of Its Motion to Dismiss (ECF no. 21-2) |
| "Pl. Mot." = | Plaintiffs Hartford Insurance Company of the Midwest's and Hartford Casualty Insurance Company's Brief in Opposition to Motions to Dismiss and in Support of Motion for Judgment on the Pleadings (ECF no. 33-1) |
| "Def. Reply" = | Defendant Axis Surplus Insurance Company's Reply Memorandum of Law in Further Support of Its Motion to Dismiss and in Opposition to Plaintiff's Motion for Judgment on the Pleadings (ECF no. 39) |
| "Pl. Reply" = | Plaintiffs Hartford Insurance Company of the Midwest's and Hartford Casualty Insurance Company's Reply Brief in Support of Motion for Judgment on the Pleadings (ECF no. 42) |

20,000 pounds (the "heavy-vehicle exclusion"). (*Id.* ¶ 16). The policies issued for 2010, 2012, 2013, and 2014 do not contain that heavy-vehicle exclusion. (*Id.*)

This allegedly was a mistake; it was the intent of Dana Transport and Hartford that the 2010, 2012, 2013, and 2014 policies, like the others, would contain a heavy-vehicle exclusion. (*Id.* ¶ 21) Dana Transport did not pay Hartford a premium commensurate with coverage for heavy vehicles. (*Id.* ¶ 22) For the 2012 policy year, Dana Transport obtained indemnity coverage up to $20 million for vehicles weighing more than 20,000 pounds from three other insurance companies. (*Id.* ¶ 23) In its Answer, Dana Transport agrees that "the Hartford 2012 Policy was not intended to provide insurance coverage to Dana for 'autos' weighing above 20,000 pounds." (ECF no. 16, ¶¶ 30, 32, 41)

### B. Louisiana Civil Actions against Dana Transport

In two consolidated cases in the United States District Court for the Middle District of Louisiana[4] (the "Underlying Actions"), Dana Transport has been named as a defendant. (Compl. ¶ 12) The plaintiffs in the Underlying Actions allege that, on October 17, 2012, they were injured on a Louisiana highway when they were struck by an 18-wheeler tractor-trailer owned by Dana Transport. (*Id.* ¶ 13) The tractor-trailer weighed over 20,000 pounds. (*Id.* ¶ 31)

The plaintiffs sued Dana Transport, Hartford, and several other insurers, as well as others. (*Id.* ¶ 13) In the Underlying Actions, Great West, as primary insurer, is defending Dana Transport. (*Id.* ¶ 33) Dana Transport's policies with Axis and AGLIC provide excess liability coverage. (*Id.* ¶¶ 34–35) On November 8, 2016, "in an oral ruling on summary judgment motions," the court in the Underlying Actions "found that the Hartford 2012 Policy . . .

---

[4] I take judicial notice that on March 24, 2017, after the motions currently before this Court were fully briefed, final judgment was entered in the consolidated cases. Final Judgment, *Bennett v. Great West Casualty Company*, 3:13-cv-00710-JWD-RLB (M.D. La. Mar. 24, 2017), ECF no. 191. On April 20, 2017, Hartford appealed that judgment to the Fifth Circuit. Notice of Appeal, *Bennett*, 3:13-cv-00710-JWD-RLB (M.D. La. Apr. 20, 2017), ECF no. 194.

clear[ly] and unambiguous[ly provided coverage], and declined to consider any extrinsic evidence." (*Id.* ¶ 28)

### C. This Action

A month later, on December 8, 2016, Hartford filed the two-count Complaint in this action.

In Count 1, Hartford seeks a declaratory judgment from this Court that "that there is no coverage afforded Dana Transport under the Hartford 2012 Policy" for the Underlying Actions. (Compl. ¶ 38) According to Hartford, such a declaration is necessary because, "[t]he rights and status and other legal relations and obligations of Hartford and Dana Transport, Great West, Axis and AGLIC are uncertain and insecure, and the entry of a declaratory judgment by this court will terminate the uncertainty and controversy which has given rise to this proceeding." (*Id.*)

In Count 2, Hartford seeks "a declaration reforming the Hartford 2010, 2012, 2013, and 2014 Policies to include the exclusion for autos or trucks with a gross vehicle weight greater than 20,000 pounds (Endorsement Form HA 99 03 01 87) and declaring that there is no coverage under the Hartford 2012 Policy" for the Underlying Actions. (Compl. ¶ 41)

On January 17, 2017, Dana Transport answered the Complaint. (ECF no. 16) On January 20, 2017, Axis filed its motion to dismiss the Complaint. (ECF no. 21) Soon thereafter, Great West and AGLIC moved to join Axis's motion. (ECF nos. 23, 29) On February 21, 2017, Hartford filed a motion for judgment on the pleadings together with its opposition to Axis's motion to dismiss. (ECF no. 33)

The motion to dismiss and the motion for judgment on the pleadings are now before the Court.

## II.  DISCUSSION AND ANALYSIS

### A. 12(b)(6) Motion to Dismiss All Claims Involving the Hartford 2012 Policy

Axis first moves to dismiss Count 1 and the portion of Count 2 that relates to the Hartford 2012 Policy on several grounds, including res judicata/claim preclusion and collateral estoppel/issue preclusion. Both of these affirmative defenses may, in a proper case, serve as the basis for a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Great W. Min. & Mineral Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 760 (D.N.J. 2012), *aff'd*, 533 F. App'x 132 (3d Cir. 2013).

### 1.  Rule 12(b)(6) Standard

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70–73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129–30 (3d Cir. 2010). In doing so, it has provided a three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See [Iqbal,* 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

## 2. Declaratory Judgment as to Coverage under Hartford 2012 Policy for the Underlying Actions (Count 1)

Axis argues that Hartford's claim for declaratory relief must be dismissed on grounds of collateral estoppel, or issue preclusion. Hartford does not explicitly concede that its request for declaratory judgment related to the Underlying Actions is subject to issue preclusion, but neither does it offer any argument in opposition. I agree with Axis that issue preclusion bars the relief Hartford seeks in Count 1.[5]

---

[5]     The Underlying Actions were diversity-jurisdiction cases, removed from Louisiana state court and governed by state law. This federal court must give the judgment in the Underlying Actions the same *res judicata* effect that a Louisiana state court would give it. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S. Ct. 1021 (2001) (excepting cases in which the state rule would contravene a strong federal interest).

Both sides here cite and rely on federal *res judicata* law. Louisiana *res judicata* doctrines, at least since 1991, have been closely parallel to federal *res judicata* law, with irrelevant exceptions. *See, e.g., Gabriel v. Lafourche Par. Water Dist.*, 2012-0797 (La. App. 1 Cir. 2/25/13), 112 So. 3d 281, 285, *writ denied*, 2013-0653 (La. 4/26/13), 112 So. 3d 848; *Williams v. City of Marksville*, 2002-1130 (La. App. 3 Cir. 3/5/03), 839 So. 2d 1129, 1131 ("Before it was amended in 1991, Louisiana law on res judicata was substantially narrower than federal law, however, the amendments expanded the law to include issue preclusion," with the exception that Louisiana requires mutuality of parties).

In short, there seems to be nothing idiosyncratic about *res judicata* in Louisiana:

> Res judicata is an issue and claim preclusion device found both in federal law and state law....
>
> Under LSA-R.S. 13:4231, res judicata bars relitigation of a subject matter arising from the same transaction or occurrence as a previous suit. Thus, the chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. *Terrebonne Fuel*, 95-0654 at p. 12, 666 So.2d at 632. Furthermore, the doctrine of res judicata is not discretionary and mandates the effect to be given to final judgments. *Leon v. Moore*, 98-1792, pp. 4-5 (La. App. 1st Cir.4/1/99), 731 So.2d 502, 505, *writ denied*, 99-1294 (La.7/2/99), 747 So.2d 20; cf. LSA-R.S. 13:4232.
>
> Louisiana Revised Statute 13:4231 embraces the broad usage of the phrase "res judicata" to include both claim preclusion (res judicata)

Under Louisiana law, "a judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to the judgment. La. R.S. 13:4231." *Paradise Vill. Children's Home, Inc. v. Liggins*, 38,926 (La. App. 2 Cir. 10/13/04), 886 So. 2d 562, 569, *writ denied*, 2005-0118 (La. 2/4/05), 893 So. 2d 884. "[U]nder La.R.S. 13:4231(3) the three requirements for issue preclusion are: '(1) a valid and final judgment; (2) identity of the parties; and (3) an issue that has been actually litigated and determined if its determination was essential to the prior judgment.'" *Liberty Mut. Fire Ins. Co. v. Weaver*, 2016-1008 (La. App. 3 Cir. 5/10/17), 219 So. 3d 442, 445–46 (quoting *Horrell v. Horrell*, 99-1093, p. 1 (La. App. 1 Cir. 10/6/00), 808 So. 2d 363, 373, *writ denied*, 01-2546 (La. 12/7/01), 803 So. 2d 971. *Paradise* observed that federal and state "requirements for res judicata are much the same." 886 So. 2d at 569. And indeed, federal case law provides similarly that relitigation of a legal or factual issue is precluded when "(1) the issue . . . is the same as that involved in the prior action; (2) the issue was actually litigated; (3) it was determined by a final and valid judgment; and (4)

---

and issue preclusion (collateral estoppel). Under claim preclusion, the res judicata effect of a judgment on the merits precludes the parties from relitigating matters that were or could have been raised in that action. Under issue preclusion or collateral estoppel, however, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Thus, res judicata used in the broad sense has two different aspects: 1) foreclosure of relitigating matters that have never been litigated but should have been advanced in the earlier suit; and 2) foreclosure of relitigating matters that have been previously litigated and decided. *Hudson v. City of Bossier*, 33,620, p. 7 (La. App. 2d Cir. 8/25/00), 766 So.2d 738, 743, writ denied, 2000-2687 (La. 11/27/00), 775 So.2d 450.

*Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp.*, 2001-0993 (La. App. 1 Cir. 7/3/02), 867 So. 2d 709, 713.

I therefore cite federal law as highly persuasive on the point, parallel citing to Louisiana law as appropriate. *See Stevens v. Bank of Am., N.A.*, 587 F. App'x 130, 132 n.2 (5th Cir. 2014) (citing *Semek* but holding that "we reach the same conclusion regardless of whether Texas or federal preclusion law applies").

8

the determination was essential to the prior judgment." *Peloro v. United States*, 488 F.3d 163, 174–75 (3d Cir. 2007) (citations omitted).

The issue on which Hartford here seeks a declaratory judgment—whether the Hartford 2012 Policy afforded coverage to Dana Transport for vehicles weighing more than 20,000 pounds—is the same issue actually litigated by Hartford in the Underlying Actions. That issue was determined by, and was essential to, the Louisiana district court's final and valid judgment granting Axis's motion for summary judgment in the Underlying Actions.

On November 8, 2016, Hon. John W. deGravelles, the district judge presiding over the Underlying Actions, held a hearing on two summary judgment motions.[6] (Def. Mot. Ex. H) As described by Judge deGravelles, the first was a motion in which Axis[7] sought "judgement regarding, one, that the Axis insurance policy is excess to the Great West and Hartford insurance policies . . . [a]nd, two, that Axis is not required to provide coverage for the plaintiff's claims unless or until the $3 million in combined limits of the Great West and Hartford policies are exhausted." (*Id.* at 4:16–23) The second was Hartford's motion seeking summary judgment "dismissing the claims of certain parties and essentially recognizing that its policy does not provide coverage in this case." (*Id.* at 4:24 – 5:3)

Hartford actually litigated the issue of coverage of vehicles exceeding 20,000 pounds. Hartford filed a motion for summary judgment and a supplemental memorandum. Hartford argued that the 2012 Policy unambiguously excluded coverage on its face. In the alternative, Hartford argued that if the court found the 2012 Policy to be ambiguous, "the court

---

[6]     In deciding Axis' motion to dismiss, I may consider the transcript of Judge deGravelles's November 8, 2016 ruling in the Underlying Actions, as it is referred to and relied on in the Complaint (Compl. ¶ 28); it is central to Hartford's claim for declaratory judgment; and it is a matter of public record. *See* Section II.A.1, *supra.*

[7]     AGLIC adopted Axis's responses to Hartford's motion for summary judgement in the Underlying Actions. (Def. Mot. Ex. H at 5:23 – 6:1, 6:10–12).

should conclude that the Hartford policy does not provide coverage based in part on the affidavit of Mr. Ronald Dana," attached to the supplemental memorandum. (*Id.* at 5:4–14) In the affidavit, Mr. Dana states that "[i]t was the intent of Dana Transport that the Hartford policy would not provide coverage for autos [exceeding] 20,000 pounds, as such coverage was being provided by a different insurer."[8] Hartford's Supplemental Memorandum, *Bennett v. Great West Casualty Company*, 3:13-cv-00710-JWD-RLB (M.D. La. Nov. 2, 2016), ECF no. 142-3.

Following a hearing, Judge deGravelles issued a "final and valid judgment" in the form of an oral ruling, followed by a written order. In ruling on the Axis and Hartford motions for summary judgment in the Underlying Actions, Judge deGravelles interpreted the Hartford 2012 Policy "as a whole." He ruled that "the vehicle in the present case is covered under Hartford's [2012] liability coverage." (Def. Mot. Ex. H at 57:23 – 58:1) Judge deGravelles issued an order granting Axis's motion for summary judgment and denying Hartford's motion. (*Id.* Ex. I) I also take judicial notice that on March 24, 2017, Judge deGravelles issue a final judgment ordering "that payment of damages to the plaintiffs [in the Underlying Actions] be paid according to the ranking of the insurance policies as decided in [Judge deGravelles's] November 8 and 15, 2016 rulings" subject to Hartford's reservation of the right to appeal those rulings. Final Judgment, *Bennett v. Great West Casualty Company*, 3:13-cv-00710-JWD-RLB (M.D. La. Mar. 24, 2017), ECF no. 191.

In sum, the issue of the extent of coverage afforded Dana Transport under the Hartford 2012 Policy presented in Count 1 (1) is identical to one that was involved in the Underlying Actions; (2) was actually litigated in the Underlying Actions; (3) was determined by a final and valid judgment by Judge deGravelles; and (4) was essential to Judge deGravelles's judgment. Thus, all

---

[8]     Finding the policy unambiguous, Judge deGravelles granted Axis's motion to strike the extrinsic Dana affidavit. (Def. Mot. Ex. H at 26:18 – 28:15)

four requirements for the application of issue preclusion are satisfied.
Accordingly, Count 1 must be DISMISSED.

### 3. Reformation of the 2012 Hartford Policy (Count 2)

Count 2 of the Complaint concerns Hartford's request that this Court
issue a declaration reforming the Hartford 2010, 2012, 2013, and 2014
policies.[9] Essentially, Hartford argues that these Policies should be deemed to
include the same heavy-vehicle exclusion that was contained in the 2008,
2009, and 2011 Policies.

I first consider separately Count 2 as it relates to the Hartford 2012
Policy. Axis argues that the portion of Count 2 that relates to Hartford 2012
Policy must be dismissed because it is barred by claim preclusion. I agree.

Under Lousiana law, claim preclusion has five essential elements:

[T]he supreme court has established the following five
elements that must be satisfied for a finding that a second action
is precluded by res judicata:

(1) the judgment is valid;

(2) the judgment is final;

(3) the parties are the same;

(4) the cause or causes of action asserted in the second suit
existed at the time of final judgment in the first litigation; and

(5) the cause or causes of action asserted in the second suit
arose out of the transaction or occurrence that was the subject
matter of the first litigation.

---

[9]     The parties, without identifying any particular difference between the laws of
New Jersey and Louisiana, dispute whether New Jersey's law governs the substance of
Hartford's contractual reformation claim. For claim-preclusion purposes, the
substantive choice-of-law issue does not matter. As background, however, I note the
following principles of New Jersey law: To effectuate the contracting parties' intent, a
court may "reform the terms of a written instrument on a claim of mutual mistake,
without regard to whether the writing is in fact ambiguous." *Cent. State Bank v.
Hudik–Ross Co., Inc.*, 164 N.J. Super. 317, 396 A.2d 347, 350 (1978). "That contracts
where there is a mutual mistake common to both parties may be reformed in equity is
[ ] well settled in [New Jersey] jurisprudence." *Sav. Inv. & Trust Co. v. Conn. Mut. Life
Ins. Co.*, 17 N.J. Super. 50, 85 A.2d 311, 314 (1951).

*Chevron U.S.A., Inc. v. State*, 07–2469, p. 10 (La. 9/8/08), 993 So. 2d 187, 194. The "chief inquiry" is whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action. *Id.*

*Henkelmann v. Whiskey Island Pres., LLC*, 2013-0180 (La. App. 1 Cir. 5/15/14), 145 So. 3d 465, 469 (line breaks added for clarity). Federal claim preclusion is similar, although it has compressed the elements to three: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (citing *Athalone*).

True, federal law refers to the "same" cause of action, while Louisiana law requires only that the claims arise from the same transaction or occurrence. On further scrutiny, however, it is apparent that both state and federal preclusion law rest on a transactional approach. They encompass not just causes of action that were asserted, but claims that could have been brought based on the same transaction or occurrence:

> Under claim preclusion, a final judgment on the merits precludes the parties from relitigating matters that were or *could have been raised* in that action. Under issue preclusion or collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. (Emphasis added.)

> Thus, unlike issue preclusion, claim preclusion is much broader, encompassing a prohibition against relitigation of those matters which, not only, were litigated but, also, of those which *could* have been litigated.

*Williams v. City of Marksville*, 2002-1130 (La. App. 3 Cir. 3/5/03), 839 So. 2d 1129, 1131 (citing *Hudson v. City of Bossier*, 33,620, p. 7 (La. App. 2 Cir. 8/25/00); 766 So. 2d 738, 743, *writ denied*, 00-2687 (La. 11/27/00); 775 So. 2d 450). "Under LSA-R.S. 13:4231, res judicata bars relitigation of a subject

matter arising from the same transaction or occurrence as a previous suit. Thus, the chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action." *Mandalay Oil & Gas*, 867 So. 2d at 713 (citing *Terrebonne Fuel*, 95-0654 at p. 12, 666 So. 2d at 632).

Similarly, the Third Circuit has instructed that a court inquiring, for claim-preclusive purposes, whether causes of action are the same, must "focus upon 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'" *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991) (citing *Athlone*, 746 F.2d at 984). "A mere difference in the theory of recovery is not dispositive." *Id.*

In *Lubrizol*, the Third Circuit held that an action to reform a settlement agreement was barred by the claim-preclusive effects of a prior judgment that the agreement included the release of a certain claim. In the later action, Lubrizol sought reformation of the agreement on the grounds of mutual mistake, saying that the agreement should have excluded the release of that particular claim. *Id.* at 961–62. The Third Circuit held that the judgment in the prior action precluded Lubrizol's reformation claim, which arose from the same facts and could have been asserted in the earlier action. *Id.* at 963.

*Henkelmann v. Whiskey Island Pres., LLC*, 2013-0180 (La. App. 1 Cir. 5/15/14), 145 So. 3d 465, while not on point factually, is to the same legal effect. There, the plaintiffs contracted to buy a lot on which the defendant would build them a boathouse, as part of a larger marina project. When the project stalled, they sued for and got a declaratory judgment as to their rights to common areas, but lost their claims for rescission and damages. They then brought a second suit claiming abandonment of the project and seeking specific performance. The court dismissed the second suit on grounds of claim preclusion. The court acknowledged the plaintiffs' argument that the abandonment of the project had become clear in the intervening period.

Nevertheless, it held that the claim for specific performance could have been raised in the earlier suit: "Because the claim for specific performance arose from the *same transaction or occurrence that was the subject matter of the prior litigation*, it was required to be advanced in the earlier suit. Failure to do so results in the foreclosure of relitigation of those matters which have never been litigated." 145 So. 3d at 470 (emphasis added).

With respect to the 2012 Hartford Policy, the "acts complained of" are the same in both suits. In both Axis's and Hartford's summary judgment motions in the Underlying Actions, Hartford sought to avoid the application of Dana Transport's Hartford 2012 Policy to vehicles weighing more than 20,000 pounds. In both the Underlying Actions and the present action, Hartford considered its own and Dana Transport's intent to be crucial. In the Underlying Actions, Hartford introduced evidence of intent in its supplemental memorandum to establish the meaning of the Hartford 2012 Policy in the event that the court found the policy to be ambiguous. Here, the precise legal theory—reformation—is different, and the intent evidence is introduced to demonstrate that Dana Transport and Hartford were "mistaken" when they entered into the Hartford 2012 Policy but omitted the heavy-vehicle exclusion. That distinction in theories is inconsequential. "[M]ultiple claims do not arise merely because 'the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts . . . .'" *Lubrizol*, 929 F.2d at 964 (quoting *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1988)); *see also Henkelmann, supra.*

The witnesses and documentation required to demonstrate intent in either case are the same. In the Underlying Actions, for the purpose of establishing the parties' intent, in addition to relying on the policy documents themselves, Hartford submitted affidavits including that of Dana Transport's president, Ronald Dana. It appears that Hartford would rely on the same or substantially similar witnesses and documents in the present reformation action to demonstrate mutual mistake.

14

Further, with respect to the Hartford 2012 Policy, "the effect of the present action would be to resurrect the . . . dispute" in the Underlying Actions. *See id.* Indeed, that appears to be not just the effect, but the intent. Clearly, the judgment of Judge deGravelles in the Underlying Actions and Hartford's action to reform the 2012 policy are based on the same transactions and occurrences. Hartford had a reasonable opportunity to assert its reformation claim in the Underlying Actions, but it did not.

Thus, no matter the merits of its reformation claim, this attempt by Hartford to collaterally attack the judgment in the Underlying Actions is precluded.[10] Accordingly, the portion of Count 2 that relates to the 2012 Hartford Policy must be DISMISSED.

---

[10] Hartford offers several arguments in opposition. Each is meritless.

First, Hartford argues that, "[h]aving successfully opposed the introduction of any extrinsic evidence related to the 2012 Policy, [Axis and Great West] cannot now claim that Hartford 'could have' litigated a reformation claim." (Pl. Reply 9) In *Lubrizol*, too, Lubrizol had attempt to introduce external evidence in the prior action but was frustrated by the parol evidence rule. That happenstance did not prevent the earlier judgment from precluding a reformation action. *Lubrizol*, 929 F.2d at 963. Even assuming that Judge deGravelles erred—which I do not—Hartford's remedy is an appeal, not a second, duplicative action.

Second, Hartford's contention that "reformation was not part of the discovery record," was not raised as an affirmative defense, and "was not addressed or even referenced in the Court's decision," (Pl. Reply 9) is misguided. Under the case law cited above, that Hartford did not specifically assert a cause of action for reformation is beside the point. It could have, but it did not. Not surprisingly, Judge deGravelles did not explicitly address that unraised issue.

Third, Hartford argues that "reformation is a separate claim, arising in equity and confined in its scope to discovering and effectuating the contract that the parties intended." (Pl. Mot. 12) That the issue of contract interpretation in the Underlying Actions arises in law, whereas reformation arises in equity, does not matter. Law and equity merged long ago in the federal courts, which allow a party to bring both types of claims in the same action, and "it is now clear that a single claim or cause of action includes all remedies, legal and equitable." 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4410 (3d ed. 2017); *see also Lubrizol*, 929 F.2d at 964 n.3 (rejecting Lubrizol's reliance on a 1906 case that permitted a suit for contract reformation despite an earlier judgment interpreting the contract, because that case was decided before the merger of law and equity).

Finally, Hartford contends that the fact that the reformation claim could have been brought in the Middle District of Louisiana "misses the point," because, in the

### B. 12(b)(1) Motion to Dismiss Count 2 Insofar as it Seeks to Reform the 2010, 2013, and 2014 Hartford Policies

The Underlying Actions involved the 2012 Policy, but did not implicate the 2010, 2013, and 2014 Hartford policies (the "Non-Implicated Policies").[11] Thus, the extent of coverage under those Non-Implicated Policies was not actually litigated in the Underlying Actions. Nor did Hartford have a reasonable opportunity to assert its reformation claim for the Non-Implicated Policies, because the Underlying Actions were confined to claims arising from an accident that occurred in 2012. Therefore, issue preclusion and claim preclusion would not bar the present action to reform the Non-Implicated Policies.

Instead, Axis and the other defendants argue that this Court lacks subject matter jurisdiction to issue a declaration reforming the Non-Implicated Policies.

### 1.    Rule 12(b)(1) Standard

The Court's subject matter jurisdiction is considered pursuant to Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable

---

absence of prejudice to any party, "negligence does not bar a claim for reformation in New Jersey." (Pl. Mot. 12) This argument is meritless, as the principle that negligence does not bar a reformation claim refers to the "negligent failure of a party to know or to discover the facts as to which both parties are under a mistake," Restatement Contracts, § 502 at 977 (1932). It does not refer to a litigant's negligent failure to bring a reformation claim in an earlier action.

[11]     The allegations of the Underlying Actions involve a 2012 accident, outside the policy period covered by the Non-Implicated Policies.

claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa,* 67 F. Supp. 2d at 438.

A factual challenge, however, attacks subject matter jurisdiction by challenging the truth (or completeness) of the jurisdictional allegations set forth in the complaint. *Mortensen,* 549 F.2d at 891. The factual nature of the attack permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States,* 341 F.3d 193 (3d Cir. 2003). Thus a factual jurisdictional challenge may not go forward unless and until the plaintiff's allegations have been controverted. *Mortensen,* 549 F.2d at 891 n.17.

Here, Defendants challenge the ripeness of the reformation action for the Non-Implicated Policies. "Courts have considered a challenge to the ripeness of a claim to be a facial challenge to subject matter jurisdiction." *Evanston Ins. Co. v. Layne Thomas Builders, Inc.,* 635 F. Supp. 2d 348, 352 (D. Del. 2009) (citing *Thompson v. Borough of Munhall,* 44 F. App'x 582, 583 (3d Cir. 2002); *Corporate Aviation Concepts, Inc. v. Multi–Service Aviation Corp.,* No. 03–3020, 2005 WL 1693931, *2 n.6 (E.D. Pa. July 19, 2005)).

## 2. Ripeness

A plaintiff must establish his or her standing to sue under Article III of the United States Constitution, which limits the jurisdiction of federal courts to "Cases" and "Controversies." This "constitutional standing'" has three essential elements, of which the first two are: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent', not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S. Ct. 2130 (1992) (internal citations omitted). At

the pleading stage, general factual allegations will suffice to discharge the plaintiff's burden. *Id.* at 561.

Ripeness is a related justiciability doctrine. "At its core, ripeness works 'to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Plains All Am. Pipeline L.P. v. Cook*, No. 16-3631, — F.3d —, 2017 WL 3403129, at *3 (3d Cir. Aug. 9, 2017) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). The underlying concerns include "whether the parties are in a 'sufficiently adversarial posture,' whether the facts of the case are 'sufficiently developed,' and whether a party is 'genuinely aggrieved.'" *Id.* (quoting *Peachlum*, 333 F.3d at 433-34. The classic ripeness test considers: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980 (1977).

In declaratory judgment cases, the Third Circuit has reformulated the *Abbot Labs* fitness and hardship factors into a "somewhat refined test" for ripeness. *Plains All Am. Pipeline*, 2017 WL 3403129, at *3 (internal quotation marks omitted) (citing *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990)). Under the *Step-Saver* test, a court must consider "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Id.* (quoting *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004)).

Axis argues that Hartford's action for the reformation of the Non-Implicated Policies is not a justiciable case or controversy because it is not ripe for consideration. This is so, says Axis, because no insured has made any claim for coverage under the Non-Implicated Policies. (Def. Mot. 26–27) Thus "the controversy alleged in the Second Count of the DJ Complaint regarding those policies is purely hypothetical" and unripe. (*Id.* at 27) Hartford counters

by arguing that New Jersey law allows contract reformation actions prior to any accident or occurrence. Thus, says Hartford, the reformation cause of action is already ripe and justiciable.[12] (Pl. Mot. 5–6) Still, it is now 2017; it is not implausible that any claims for 2014 or earlier would have surfaced by now; and Dana Transport, at least, probably knows whether its trucks were in any serious accidents in that period.

There is one late-emerging development, however, that may have significantly altered the factual background of this ripeness inquiry—at least with respect to reformation of the 2014 policy. In its reply brief, Hartford informed the Court that it had been named a defendant in another action in Louisiana state court, *Hendrix v. Great West, et. al.*, No. 2015-12425 (22d Judicial Dist. La.) ("*Hendrix*").[13] (Hartford has attached several documents from that action as Exhibit A to its reply brief.) In *Hendrix*, the plaintiff alleges that on November 9, 2014, a Dana Transport tractor trailer (presumably weighing more than 20,000 pounds) collided with his car while driving on a highway. (Pl. Reply Ex. A) Because the alleged collision occurred in 2014, the Hartford 2014 Policy is implicated in the *Hendrix* action.

In evaluating the ripeness of the reformation claim for the Non-Implicated Policies, the Court may consider events subsequent to the filing of

---

[12]    Axis notes that Hartford does not cite any legal authority in support of its contention that contract reformation actions may be brought before an accident or occurrence. (Def. Reply 4) Regardless, the question here is the justiciability of the matter in federal court, not the substantive requirements of New Jersey law.

[13]    On June 11, 2015, Hendrix, the plaintiff in the Louisiana state court action, first sued Great West, Dana Transport, and the truck driver. (Pl. Reply Ex. A) He later amended his petition to add Axis as a defendant. (*Id.*) After the expiration of the deadline for filing supplemental and amended pleadings in that case, counsel for Great West and Dana Transport informed Hendrix that "recent Court decisions in other jurisdictions have established coverage under a commercial automobile policy issued by Hartford." (*Id.*) Taking up the suggestion, Hendrix then amended his pleadings to include Hartford. (*Id.*)

Hartford was served with the Complaint in that action on February, 21, 2017—the same day that it filed its motion for judgment on the pleadings and its brief in opposition to Axis's motion to dismiss. (Pl. Reply 5)

the Complaint, such as the addition of Hartford in the *Hendrix* action. *See Geneva Coll. v. Sebelius*, 929 F. Supp. 2d 402, 423 (W.D. Pa. 2013), *on reconsideration in part* (May 8, 2013) ("Unlike standing which is determined as of the time the case commenced, ripeness may consider events which have occurred after the filing of the complaint.") (citing *Buckley v. Valeo*, 424 U.S. 1, 114–17, 96 S. Ct. 612 (1976)); *Newark Branch, N.A.A.C.P. v. Millburn Twp., N. J.*, No. CIV. A. 89-4219, 1990 WL 238747, at \*4 (D.N.J. Dec. 27, 1990) ("In determining ripeness, a court may consider events that occurred after the filing of the complaint.") (citing *American Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 n.4 (2d Cir. 1989)); *see also* 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3532.7 (3d ed. 2017) ("Ripeness should be decided on the basis of all the information available to the court.").

As a general matter, then, I am not barred from considering *Hendrix* in my application of the three-part *Step-Saver* test to this case.

Still, neither the facts nor the law are developed. Hartford brought the *Hendrix* action to the Court's attention only in its reply brief. Hartford did not explicitly apply the *Step-Saver* factors to demonstrate that the declaratory judgment action for reformation of the Non-Implicated Policies is ripe for adjudication. Nor did Hartford specify the precise harm that the *Hendrix* action poses; ripeness may depend, for example, on whether the expected harm arises from the duty to defend or the duty to indemnify.[14] Further, Axis, Great West, and AGLIC did not have an opportunity to submit briefs in response to this issue. In addition, months have passed since Hartford alerted the Court to

---

[14]     *Compare Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 353 (D. Del. 2009) ( "As a general matter, courts refrain from adjudicating whether an insurer has *duty to indemnify* the insured until after the insured is found liable for damages in an underlying action.") (emphasis added), *with Navigators Specialty Ins. Co. v. Scarinci & Hollenbeck, LLC*, No. CIV.09-4317(WHW), 2010 WL 1931239, at \*4 (D.N.J. May 12, 2010) (It is "well established that a disagreement on the insurers' *obligations to defend* is a 'case or controversy.'") (emphasis added) (quoting *ACandS, Inc., v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981).

*Hendrix* on March 13, 2017, and events relevant to the ripeness question may have occurred in the interim.

Accordingly, the motion to dismiss the portion of Count 2 that seeks a declaration reforming the Non-Implicated Policies is ADMINISTRATIVELY TERMINATED. The parties must, within 30 days submit (a) affidavits detailing the current status of the *Hendrix* action and properly sponsoring any pertinent exhibits (which should not merely be appended to briefs); and (b) supplemental briefs (not to exceed 15 pages) addressing:

(1) The ripeness of the declaratory judgment action for the Non-Implicated Policies in light of the current state of the *Hendrix* action. In particular, the parties are to explicitly address the *Step-Saver* factors, as those factors are explained in recent Third Circuit precedent, including *Plains All Am. Pipeline L.P. v. Cook*, No. 16-3631, ___ F.3d ___, 2017 WL 3403129, at *3 (3d Cir. Aug. 9, 2017), as they apply to (a) the 2014 Hartford Policy and (b) the 2010 and 2013 Hartford Policies. The parties should also address whether the potential harm, if any, to Hartford from the *Hendrix* action derives exclusively from a duty to indemnify or whether the duty to defend is also at play.

(2) Assuming the declaratory judgment action is ripe, whether the Court should exercise or decline jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). In particular, the parties are to address: (a) whether the *Hendrix* action is a "parallel state proceeding," and (b) any other factors relevant to the Court's decision whether to abstain, as recently summarized by the Third Circuit in *Kelly v. Maxum Specialty Ins. Grp.*, No. 15-3618, ___ F.3d ___, 2017 WL 3585182, at *2–4 (3d Cir. Aug. 21, 2017).[15]

---

[15]    The Declaratory Judgment Act provides that federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis

(3) Whether any other relevant claims under the non-Implicated Policies are pending or anticipated.

---

added). "Granting a declaratory judgment is therefore discretionary and a court may abstain from entertaining an action seeking only declaratory relief." *Kelly v. Maxum Specialty Ins. Grp.*, No. 15-3618, __ F.3d __, 2017 WL 3585182, at *2–4 (3d Cir. Aug. 21, 2017) (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).

The Third Circuit has "directed courts deciding whether to entertain a declaratory action to weigh certain enumerated and other factors 'bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for [federal] resolution.'" *Id.* (quoting *Reifer*, 751 F.3d at 138).

Under the "uniform approach" laid out by the Third Circuit, "courts should first determine whether there is a 'parallel state proceeding.'" *Id.* (quoting *Reifer*, 751 F.3d at 143, 146). Although not dispositive, "the existence of a parallel state proceeding is . . . a significant factor that is treated with 'increased emphasis.'" *Id.* (quoting *Reifer*, 751 F.3d at 144). Accordingly, "'the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise,'" whereas "the existence of a parallel state proceeding 'militates significantly in favor of declining jurisdiction.'" *Id.* (quoting *Reifer*, 751 F.3d at 144-45).

Courts should then meaningfully consider other factors "to the extent they are relevant," including those in the following non-exhaustive list:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at *4 (quoting *Reifer*, 751 F.3d at 146). A court declining jurisdiction in the absence of a state parallel proceeding, or conversely exercising jurisdiction despite the existence of a parallel proceeding, should rigorously ensure itself that " that the existence or "lack of a pending parallel state proceedings is outweighed by opposing factors." *Id.* (quoting *Reifer*, 751 F.3d at 144–45).

## C. Rule 12(c) Motion for Judgment on the Pleadings

Hartford has also filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), as to its claims in Count 2 for reformation of the 2012 Hartford Policy and the Non-Implicated Policies.

To begin with, Hartford's motion is premature. Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Here, although Dana Transport has answered the Complaint, the pleadings are not yet "closed," because defendants Axis, Great West, and AGLIC have not yet filed answers. Hartford responds that only Dana Transport's and Hartford's intentions are relevant to the reformation of the policies; thus, "the pleadings are closed as to the only two parties whose intentions matter." (Pl. Reply 4) Nevertheless, the other insurers have a vital financial interest in whether Hartford, too, covers this loss, and they may be entitled to be heard on the issue of whether the claim of mutual mistake is legally and factually viable.[16]

Timing aside, there are substantive impediments to Hartford's motion. First, insofar as the motion relates to reformation of the 2012 Policy, the motion is moot in light of the Court's holding that the reformation of the 2012 Hartford Policy is barred by claim preclusion. As for the portion of the claim seeking to reform the Non-Implicated Policies, this Court's subject matter jurisdiction is in doubt and requires further clarification in the parties' forthcoming supplemental briefing. Accordingly, Hartford's motion for judgment on the pleadings is DENIED.

---

[16]    To put it another way, from the other insurers' point of view, it is not sufficient that Hartford and Dana agree that they, and not Hartford, are liable.

### III.  CONCLUSION

For the reasons set forth above:

(1) Great West's and AGLIC's motions to join Axis's motion to dismiss and AGLIC's motions to join Axis's opposition brief (ECF nos. 23, 29, 43) are GRANTED;

(2) Axis's motion to dismiss (ECF no. 21) is GRANTED IN PART as to Count 1 and the portion of Count 2 seeking a declaration reforming the Hartford 2012 Policy, and is ADMINSTRATIVELY TERMINATED IN PART, WITHOUT PREJUDICE, as to the portion of Count 2 seeking a declaration reforming the 2010, 2013, and 2014 Hartford Policies; and

(3) Hartford's motion for judgment on the pleadings (ECF no. 33) is DENIED.

An appropriate Order follows.

Dated: August 23, 2017

HON. KEVIN MCNULTY, U.S.D.J.